UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS M.,

                                        Plaintiff,

v.                                                              1:19-CV-355(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           MELISSA PALMER, ESQ.
for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

HON. GRANT JAQUITH                          RAMI VANEGAS, ESQ.
United States Attorney                      Special Assistant
for Defendant
100 S. Clinton St.
PO Box 7198
Syracuse, NY 13261-7198

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER

        Presently before the Court in this action, in which Plaintiff seeks judicial review of an

adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are

cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with

those motions on July 16, 2020, during a telephone conference at which a court reporter was

_____

        [1]        This matter, which is before me on consent of the parties pursuant to 28 U.S.C. §
636(c), has been treated in accordance with the procedures set forth in General Order No. 18.  Under
that General Order, once issue has been joined, an action such as this is considered procedurally as
if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure.

present.  At the close of argument I issued a bench decision in which, after applying the requisite

deferential review standard, I found the Commissioner's determination resulted from the application

of proper legal principles and was supported by substantial evidence, and I provided further detail

regarding my reasoning and addressing the specific issues raised by the Plaintiff in his appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been

transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is

hereby,

**ORDERED**, as follows:

(1)   Defendant's motion for judgment on the pleadings is **GRANTED**;

(2)   The Commissioner's determination that Plaintiff was not disabled at the relevant
        times, and thus is not entitled to benefits under the Social Security Act, is
        **AFFIRMED**; and

(3)   The Clerk is directed to enter judgment, based upon this determination, dismissing
        Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: July 23, 2020
          Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
NICHOLAS J. M.,

                    Plaintiff,

vs.                                        1:19-CV-355

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------x

*DECISION* - July 16, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE THÉRÈSE WILEY DANCKS

United States Magistrate Judge, Presiding


<u>APPEARANCES</u> (by telephone)

For Plaintiff:      OLINSKY LAW GROUP
                    Attorneys at Law
                    250 South Clinton Street
                    Syracuse, NY 13202
                       BY:  MELISSA A. PALMER, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Regional General Counsel
                    15 New Sudbury Street
                    Boston, MA 02203
                       BY:  RAMI VANEGAS, ESQ.



*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

*Decision - 7/16/2020 - 19-cv-355*                    2

1       THE COURT:  I have before me a request for judicial

2  review of an adverse determination by the Acting Commissioner

3  under 42, United States Code, Section 405(g).

4       The background is as follows:  The plaintiff was

5  born in November of 1982 and is currently 37 years old.  He

6  was 32 years old at the onset of his alleged disability.  He

7  completed some high school and he has a GED.  He has not

8  engaged in substantial gainful activity since the alleged

9  onset date.  He has worked jobs since then in the auto

10 service industry and as a groundskeeper, but those jobs did

11 not rise to the level of substantial gainful activity.  In

12 his application for benefits, he indicated he suffers from

13 traumatic brain injury, neck pain and stiffness, right sided

14 numbness, and balance problems.

15      Procedurally, the plaintiff filed for Title II

16 benefits on July 13, 2016, alleging disability beginning

17 specifically on March 15, 2015.  A hearing was conducted by

18 Administrative Law Judge Asad Ba-Yunus on December 20, 2017,

19 wherein plaintiff testified, as did a vocational expert.

20 Plaintiff was represented by an attorney at that hearing who

21 also represented plaintiff through the Appeals Council

22 process.  ALJ Ba-Yunus issued a decision on March 22, 2018,

23 finding the plaintiff was not disabled at the relevant times.

24 The Social Security Administration made that a final

25 determination of the Agency by the Appeals Council's

1  January 22, 2019 denial of plaintiff's request for review.

2  This timely District Court action followed.

3          ALJ Ba-Yunus applied the five-step sequential test

4  for determining disability.  At step one, he found plaintiff

5  had not engaged in substantial gainful activity since the

6  onset date of disability.  At step two, he concluded that

7  plaintiff suffers from several severe conditions secondary to

8  a motor vehicle accident, including traumatic brain injury

9  with subarachnoid hemorrhage, status post left occipital

10  condyle fracture, status post right tibia/fibula fracture

11  requiring reduction and internal fixation surgery, ankle and

12  hip dislocation with reduction, right sided numbness,

13  deficits in balancing, and post traumatic epileptic seizures.

14  At step three, the ALJ concluded that plaintiff's conditions

15  do not meet or medically equal any of the listed

16  presumptively disabling conditions, considering several

17  physical and mental health listings.  Then after a review of

18  the record evidence, the ALJ determined plaintiff is capable

19  of performing light work but with several detailed additional

20  postural and non-exertional limitations considering his

21  physical and mental abilities.  At step four, the ALJ

22  concluded plaintiff could not perform any of his past

23  relevant work.  At step five, the ALJ applied the

24  Medical-Vocational Guidelines as well as obtained testimony

25  from a vocational expert, and concluded that the plaintiff

1   was not disabled.

2           As relevant to the time period in question,

3   plaintiff was treated at Albany Medical Center and at Glens

4   Falls Hospital after his motor vehicle accident.  He also

5   received physical and occupational therapy at Glens Falls

6   Rehabilitation and Wellness Center.  He treated with various

7   providers at Adirondack Rehabilitation Medicine, and also

8   treated with neurologist Dr. Francisco Gomez of Gomez

9   Neurology, primary care physician Dr. Thomas Portuese of

10  Hudson Headwaters Health Network, and neurosurgeon Dr. John

11  German of Albany Medical Center.  Diagnostic studies

12  performed include an EMG in June of 2013, two EEGs, one in

13  June of 2013 and the other in December of 2017, MRIs of the

14  brain and cervical spine, and various other X-rays.  A

15  neuropsychological evaluation was conducted by psychologist

16  Dr. Phyllis Broege in November of 2017, who also provided a

17  source statement.  Other opinions in the record are from

18  treating physician Dr. Portuese; occupational medicine

19  consultant Dr. William Rogers, who opined on plaintiff's

20  physical limitations; and psychologist Dr. Thomas Osika, who

21  conducted a psychological evaluation.  Agency record reviewer

22  psychologist Dr. M. Momot-Baker also provided an opinion

23  regarding plaintiff's limitations.

24          I've reviewed the record carefully, and in light of

25  the arguments of counsel and what counsel have presented in

*Decision - 7/16/2020 - 19-cv-355*                                    5

1   their briefs, I have applied the requisite deferential

2   standard which requires me to determine whether proper legal

3   principles were applied and whether the result is supported

4   by substantial evidence.

5           I'll turn first to the plaintiff's argument that

6   the ALJ erred in the determination of the plaintiff's

7   residual functional capacity, or RFC, and specifically that

8   the ALJ did not give proper weight to the opinion evidence.

9           I've done a thorough and searching review of the

10  record and find that the ALJ did properly assess the medical

11  and non-medical evidence of record and the RFC is supported

12  by substantial evidence.  The ALJ thoroughly discussed the

13  medical evidence and other evidence of record, formulated the

14  RFC based upon an assessment of all medical and non-medical

15  evidence as a whole for the relevant time period, and

16  thoroughly explained his analysis in arriving at the RFC.

17          The ALJ's decision shows he considered plaintiff's

18  testimony, his adult function report, his activities, and all

19  treatment records for the relevant period.  He noted

20  plaintiff had a history of a motor vehicle accident causing

21  numerous serious injuries and the need for multiple

22  surgeries.  He credited examining consulting psychologist

23  Dr. Osika's opinion with significant weight and also gave

24  significant weight to non-examining Agency psychologist

25  Dr. Momot-Baker.  He gave very little weight to the opinion

1   of psychologist Dr. Broege, who performed a

2   neuropsychological evaluation at the referral of primary care

3   physician Dr. Portuese.  The ALJ also gave little weight to

4   the opinion of Dr. Portuese.

5              Plaintiff argued the ALJ's assessment of

6   Dr. Momot-Baker's opinion was improper because he accorded

7   more weight to it than to the opinions of examining and

8   treating providers and because the opinion was inconsistent

9   with the opinions of Dr. Broege and Dr. Portuese.  Plaintiff

10  also argues the RFC was not consistent with Dr. Osika's

11  opinion, which was accorded significant weight.  For the

12  following reasons, I find these arguments unpersuasive.

13             Initially, I note that the ALJ is not required to

14  accept every limitation assessed by an examining consultant.

15  Next, I note that the psychological exam by Dr. Osika, to

16  which significant weight was given, was largely unremarkable.

17  While Dr. Osika noted plaintiff reported having trouble with

18  his memory and trouble following directions since the motor

19  vehicle accident, Dr. Osika noted plaintiff drove himself

20  alone to the appointment.  Plaintiff was casually dressed

21  with adequate hygiene.  His speech was fluent, coherent and

22  logical, and his insight and judgment were fair to good.  He

23  was fully oriented in all spheres and alert, and there were

24  no signs of delusions, hallucinations, obsessions or

25  compulsions.  His mood and affect were mildly dysphoric and,

1    as plaintiff reported, he had trouble with concentration and

2    energy level.  In describing and assessing plaintiff's

3    functional abilities, Dr. Osika noted that plaintiff had

4    trouble with balance and had a hard time doing chores around

5    the house, but he did accomplish some maintenance and yard

6    work, watched television, played with his dogs, and spent

7    some time with his family and friends.  Dr. Osika thought

8    plaintiff would benefit from counseling and that it may be

9    helpful to have a more extensive evaluation of his memory and

10   concentration to elicit his strengths and weaknesses, but

11   overall Dr. Osika opined that plaintiff would have mild

12   difficulty with simple tasks and moderate difficulty with

13   complex tasks.  Dr. Osika also opined plaintiff would have

14   mild difficulty with the ability to interact with people in

15   the workplace.

16          Notably, psychiatric and mental exams by other

17   providers were largely unremarkable.  For example, on

18   multiple dates of treatment during the relevant time period,

19   Dr. German and other providers at Albany Medical Center's

20   neurosurgery service found plaintiff pleasant, fully alert

21   and oriented, and with clear, fluent and appropriate speech.

22   Although plaintiff complained of mild memory difficulties,

23   Dr. German repeatedly noted he followed complex commands

24   without difficulty and he asked and answered questions

25   appropriately.  Neurologist Dr. Gomez noted plaintiff on

1    multiple office encounters to be completely alert, oriented

2    and cooperative.  Dr. Gomez also noted plaintiff's speech,

3    concentration, recent and remote memory appeared normal to

4    conversation.  In April 2017 plaintiff reported he felt

5    better, although he complained of some memory issues, and an

6    ambulatory EEG in December of 2017 showed some mild epileptic

7    activity.  The approximately 22 encounter notes of treating

8    physician Dr. Portuese from June 2013 to July of 2016 all

9    show that plaintiff had good judgment and he was always

10   active, alert and fully oriented.  Dr. Portuese also

11   consistently noted plaintiff's recent and remote memories

12   were entirely normal.

13          Dr. Portuese provided a source statement in which

14   he opined plaintiff would be 10 percent off task except for

15   being 15 to 20 percent off task in maintaining a regular work

16   schedule, understanding and carrying out simple instructions,

17   maintaining concentration to complete tasks in a timely

18   manner, meeting minimum accuracy and quality standards,

19   responding appropriately to changes in a routine work

20   setting, and dealing with normal work stress.  The ALJ gave

21   little weight to this opinion since it was not supported by

22   the majority of the record, including Dr. Portuese's own

23   treatment notes showing intact memory and concentration, and

24   the opinion was inconsistent with diagnostic tests including

25   the tests showing that plaintiff's seizure actives are short,

1    infrequent and not debilitating, and his brain MRIs were also

2    largely normal.  For the same reasons, the ALJ found the

3    source statement provided by psychologist Dr. Broege should

4    be accorded very little weight.  Her findings too were

5    inconsistent with the majority of the record as I've outlined

6    above.

7            Plaintiff also takes issue with the ALJ giving

8    significant weight to the opinion of non-examining Agency

9    consultant Dr. Momot-Baker, arguing that it is not consistent

10   with the record as a whole, pointing to the opinions of

11   Dr. Broege and Dr. Osika, who indicated plaintiff would have

12   difficulty with simple instructions.  However, as noted

13   earlier, Dr. Osika opined that plaintiff would have only mild

14   difficulty with simple tasks and moderate difficulty with

15   complex tasks.  This is consistent with Dr. Momot-Baker's

16   opinion that plaintiff would be limited to simple and some

17   detailed instructions, and that plaintiff had moderate

18   limitation in the ability to understand, remember and carry

19   out detailed instructions.  Dr. Momot-Baker's opinion is also

20   consistent with the records I've already outlined indicating

21   some issues with memory and cognition that would not disrupt

22   plaintiff's ability to perform semi-skilled work, the

23   multiple examinations by his treating providers Drs. German

24   and Portuese showing plaintiff had good judgment, intact

25   memory, and that plaintiff could follow complex commands

*Decision - 7/16/2020 - 19-cv-355*

1  without difficulty and ask and answer questions

2  appropriately.  Further, relevant diagnostic tests show that

3  his brain MRIs were normal, as I've stated, and his EEGs and

4  follow-up treatment notes show his seizures treated with

5  medication were short, infrequent and not debilitating.

6         Further regarding plaintiff's argument that the ALJ

7  erred in giving significant weight to Dr. Momot-Baker's

8  opinion because Dr. Momot-Baker did not examine the

9  plaintiff, I disagree.  While it is correct that

10 Dr. Momot-Baker did not personally examine the plaintiff, it

11 is well settled that the opinions of state Agency consultants

12 can be given weight if supported by medical evidence and

13 other evidence of record.  The ALJ clearly stated, and the

14 record supports, that he gave weight to Dr. Momot-Baker's

15 opinion because it was supported by the record evidence as

16 I've outlined already.

17        Further supporting the weight given to

18 Dr. Momot-Baker's opinion and the opinion of Dr. Osika and

19 the overall RFC are the plaintiff's reported daily

20 activities.  Plaintiff indicated he was able to follow

21 written and spoken instructions, and he was able to perform

22 some work, albeit not at the level of substantial gainful

23 activity.  Plaintiff reported he was able to cook on a daily

24 basis, go shopping, drive himself and by himself, manage

25 money, and go out alone.  Plaintiff reported in his function

1   report and to his providers that he was the primary care

2   giver of one of his children.  He had no problems completing

3   household chores, although he needed a riding lawnmower, and

4   he could still do the hobbies of carpentry and car detailing

5   and repairs.

6            I also note that there is no requirement that the

7   ALJ accept every limitation in the opinion of a medical

8   source or a consultative examiner.  Nor must the RFC

9   identically track any one of those opinions.  The ALJ has the

10  responsibility of reviewing all of the evidence before him,

11  resolving inconsistencies, and making a determination

12  consistent with the evidence as a whole.  Stated another way,

13  it is the ALJ's responsibility to weigh the various opinions

14  along with other evidence and determine which limitations

15  were supported by the overall evidence of record.  The Court

16  cannot reweigh the evidence under the substantial evidence

17  review standard.  Here, the ALJ considered all of the

18  opinions and other evidence of record when determining

19  plaintiff's overall RFC including the mental limitations.

20           I also find the ALJ did not err in considering

21  plaintiff's ability to work in some capacity during the

22  relevant time period given that it is a proper factor to

23  consider in assessing the claim.  I find the RFC is supported

24  by the opinions, other medical records, and the non-medical

25  evidence since plaintiff is limited to semi-skilled tasks,

*Decision - 7/16/2020 - 19-cv-355*                    12

1   may only have frequent interaction with the public, and he

2   can tolerate occasional changes to a routine work setting.

3         I also find all of the treatment briefly outlined

4   above was thoroughly reviewed by the ALJ and the records

5   provide clear and substantial evidence to support the RFC

6   determination such that meaningful review is possible.  In

7   *Cichocki versus Astrue*, 729 F.3d 172, the Second Circuit

8   stated that only where the reviewing court is unable to

9   fathom the ALJ's rationale in relation to the evidence in the

10  record would remand be appropriate for further findings or

11  clearer explanation for the decision.  As I stated, I find

12  that the ALJ's analysis regarding plaintiff's functional

13  limitations and restrictions afford an adequate basis for

14  meaningful judicial review, applies the proper standards, and

15  is supported by substantial evidence such that additional

16  analysis would be unnecessary or superfluous.

17        All in all, I find that the ALJ properly weighed

18  the opinions of record for the relevant period, gave good

19  reasons for the weight given to the opinions, and the ALJ

20  considered all of the medical evidence showing mostly limited

21  findings on the mental examinations.  The ALJ also properly

22  considered plaintiff's own reported activities per his

23  testimony, his function report, and as he reported to his

24  providers.  All of this supports the ALJ's determination of

25  the plaintiff's RFC.  In short, I find the ALJ properly

*Decision - 7/16/2020 - 19-cv-355*                    13

1    explained the reasons for the RFC.  And in light of the

2    foregoing and considering the entire record, I find the ALJ

3    applied the appropriate legal standards of review in

4    determining plaintiff's RFC and the RFC is supported by

5    substantial evidence.

6              Lastly, I find plaintiff's contention regarding the

7    Appointments Clause of the United States Constitution to be

8    without merit.  Here, plaintiff essentially argues that the

9    ALJ did not exercise lawful authority in denying his claim

10   because the ALJ was an inferior officer who was not properly

11   appointed pursuant to the Appointments Clause.  As such,

12   plaintiff argues this case must be remanded to a different

13   ALJ who has been constitutionally appointed.  The defendant

14   counters that plaintiff forfeited his Appointments Clause

15   claim because he failed to assert this challenge during the

16   administrative proceedings.

17             The Court is aware that courts in this circuit and

18   other Circuit Courts differ on this issue.  For example, the

19   Third Circuit Court of Appeals has adopted plaintiff's view

20   in *Cirko versus Commissioner*, 948 F.3d 148.  The

21   Eighth Circuit, in *Davis versus Saul*, a recent opinion at

22   2020 WL 3479626, the Court there recently ruled that

23   constitutional claims must be presented in Agency proceedings

24   as argued by the Commissioner here.  I have considered all of

25   the rulings speaking to this issue and find that plaintiff

1  was required to raise the Appointments Clause issue at the

2  Agency level prior to raising it in federal court.  I agree

3  with the arguments of the Commissioner as set forth in his

4  brief, and I also fully adopt the reasoning of my colleague,

5  Magistrate Judge Baxter, as set forth in his recent decision

6  of *Danielle R. versus Commissioner*, 2020 WL 2062138.  Also,

7  even if I were to credit the plaintiff's argument that he

8  could not have raised this challenge at the Agency level

9  because his deadline to submit evidence to the Appeals

10 Council expired one month before the case of *Lucia versus*

11 *SEC*, 138 S.Ct. 2044, on which he relies, was decided, the

12 argument still fails because the *Lucia* case was, however,

13 decided before the Appeals Council's denial of review in this

14 case.

15         For these reasons, I conclude that this is not one

16 of the rare cases as described in *Freytag versus Internal*

17 *Revenue*, 501 U.S. 868, where a court should excuse

18 plaintiff's failure to raise an Appointments Clause claim

19 during the administrative process.  Accordingly, plaintiff is

20 not entitled to remand based upon an alleged violation of the

21 Appointments Clause.

22         So, I grant defendant's motion for judgment on the

23 pleadings and will enter a judgment dismissing plaintiff's

24 complaint in this action.  A copy of the transcript of my

25 decision will be attached to the order should any appeal be

1    taken from my determination.

2

3                    *              *              *

4

5                    C E R T I F I C A T I O N

6

7            I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

8    Realtime Court Reporter, in and for the United States

9    District Court for the Northern District of New York,

10   do hereby certify that pursuant to Section 753, Title 28,

11   United States Code, that the foregoing is a true and correct

12   transcript of the stenographically reported proceedings held

13   in the above-entitled matter and that the transcript page

14   format is in conformance with the regulations of the

15   Judicial Conference of the United States.

16

17

18

19   _____
                *Eileen McDonough*

20            EILEEN MCDONOUGH, RPR, CRR
             Federal Official Court Reporter

21

22

23

24

25